SAMUEL H. PENNINGTON *v.* ELIAS L'HOMMEDIEU and SAMUEL
FOWLER, Executor of SAMUEL FOWLER, deceased.

To a bill by a daughter, against the Executors of her father's will, for her share of the
residue of the personal estate by the will to be divided among the children, the
Executors set up a release executed by her and her husband of all their interest in
the estate for $700. No inventory of the personal estate had been made by the
Executors; and the shares afterwards proved to be $4,500 each.

*Held*, that the release was no bar.

No higher duty rests on this Court than that of insisting on a plain, direct and faith-
ful performance of the trust reposed in Executors.

A father, without taking out letters of guardianship, acted as the guardian of the
estate of his daughter, received moneys expressly in that character, and receipted
for them in that character.

*Held*, that lapse of time in analogy to the statute of limitations was no defense.

The bill in this case, filed Sept. 20, 1845, is exhibited by
Samuel H. Pennington, against Elias L'Hommedieu and Sam-
uel Fowler; and states that Samuel Fowler, late of the
County of Sussex, deceased, left a will, dated Dec. 4, 1842, and
appointed his sons Samuel Fowler, (one of the defendants,)
Henry O. Fowler, Robert O. Fowler and John Fowler, together
with Elias L'Hommedieu, (the other defendant,) and Daniel
Haines Executors thereof. That the said testator died on or
about Feb. 26, 1844; and that L'Hommedieu and Samuel
Fowler, (the defendants,) two of the Executors named in the said
will, proved the same and took upon themselves the burden &c.,
and possessed themselves of all the personal estate of the testa-
tor, to a very large amount.

That on the death of Jacob S. Thompson, who was an uncle
of Julia Ann Bigelow, and who died about the 1st of Jan., 1832,
intestate, the said Julia Ann Bigelow, as one of the heirs at law
of the said Jacob S. Thompson, deceased, became entitled in fee,
as tenant in common with divers other persons, heirs at law of
said intestate, to a large and valuable real estate, situate in the
County of Warren. That the share of the said Julia Ann was the
one equal undivided fifth part, and was divided and set off to her

in severalty on or about March 1st, 1832. And that the said Julia Ann, as one of the next of kin of the said Jacob S. Thompson, deceased, became entitled to a distributive share of the personal estate of said intestate; her distributive share being one fifth. That during the minority of the said Julia Ann, and at or about the time of the death of the said Jacob S. Thompson, the said Samuel Fowler, deceased, was appointed and became the Guardian of the estate, real and personal, of the said Julia Ann; and as such took possession, charge and custody of the real estate of the said Julia Ann; and from time to time received large sums of money of the personal estate of the said Julia Ann. That, in particular, the said Samuel Fowler, deceased, received from Jacob T. Sharp, the Administrator in Pennsylvania of the said J. S. Thompson, deceased, on or about the 8th of Feb., 1833, $1315. And that the said Samuel Fowler, deceased, gave to the said Sharp a receipt for the same as follows: " Received, Feb. 8th, 1833, of Jacob T. Sharp, Administrator of the estate of Jacob Thompson, deceased, in Pennsylvania, $1315, for the use of Julia Ann Fowler, my daughter and ward, one of the heirs of said estate." and signed "Samuel Fowler Guardian of Julia Ann Fowler."

That, in particular, the said Samuel Fowler, deceased, leased a large and valuable part of the said real estate of said Julia Ann to one Mark Thomson, from on or about the time of the death of the said Jacob S. Thompson until on or about April 1st, 1834, and received from time to time the rent reserved for the same, amounting in all to about $500, or a large part of the same; and that the said Samuel Fowler, deceased, leased several other large and valuable parts of the said real estate of the said Julia Ann to divers persons, and received from time to time the rent reserved for the same, or some part thereof, amounting to a large sum of money; and used and occupied divers other large and valuable parts of the real estate of the said Julia Ann, and derived great gains therefrom for his own use and benefit.

That if said Samuel Fowler, deceased, failed to collect any part of the rents so reserved such failure was owing entirely to

and resulted from his neglect and inattention, and that his legal representatives ought to account for the same.

That the complainant is informed and believes, that a large part of the money so received by the said Samuel Fowler, deceased, and particularly the amount so received from the said Jacob T. Sharp, was, immediately after the receipt of the same, invested by the said Samuel Fowler, deceased, for the use and benefit of the said Julia Ann, upon good and sufficient bond and mortgage; and that the said Samuel Fowler, deceased, received, from time to time, large sums for or on account of interest therefor.

That if the said Samuel Fowler, deceased, omitted to invest the moneys so received by him, or any part thereof, or used the same in his own business for his own use, his personal representatives should account for legal interest thereon; and should account for the use and occupation of such parts of the said real estate as were occupied by the said Samuel Fowler, deceased, and interest on the value of such use and occupation.

That the said Samuel Fowler, deceased, by his will, (after giving divers pecuniary and specific legacies, and devising certain of his real estate, and directing the payment of certain annuities out of his personal estate, and which he charged upon the residue of his real estate not specifically devised in case of a want of personal estate, and authorising his executors, in that case, to sell or set apart, for such payment, such a part of the said residue of his real estate as they should deem proper,) bequeathed and devised as follows: "Then, all the rest and residue of my estate, real and personal, I give devise and bequeath unto my sons Samuel Henry Ogden, Robert Ogden and John, and my said daughters Julia, Mary Estelle, Rebecca and Clarinda, to be equally divided between them, share and share, alike; giving to my executors, nevertheless, power to sell such parts of my real estate in this clause devised as shall to them seem most advantageous to my estate."

That the said Julia Ann Bigelow, whose maiden name was Julia Ann Fowler, was the daughter of the said testator, and is the person mentioned in the said receipt given by him, in his life time, and in the said will. That the said Julia Ann attained her

22

majority on or about Feb. 17th, 1834; and was married to and with Moses Bigelow, of Newark, on or about Feb. 4th ,1836.

That on the 7th of May, 1844, by an indenture made and executed by and between the said Moses Bigelow and Julia Ann Bigelow, of the first part, and the complainant of the second part, reciting, among other things, that the said Samuel Fowler, deceased, had, in and by his will, bequeathed and devised as herein before recited; and that the said Julia Ann Bigelow was entitled to have and receive from the said executors a large sum of money as the balance due from the said testator as her guardian; and that the said Moses Bigelow, by reason of his said marriage and of his marital rights, had theretofore, from time to time, had and received divers sums of money derived from the estate of the said Julia Ann Bigelow, both real and personal, which her was seized of and entitled to, bothbefore and after her said marriage, amounting to several thousands of dollars; the said Moses Bigelow and Julia Ann Bigelow, for the consideration therein named, bargained, sold, assigned, transferred and set over to the complainant, among other things, all such sum or sums of money as the said Moses Bigelow and Julia Ann Bigelow, or either of them then was or might thereafter be entitled to by or under the said will, in any manner, by reason of any provision thereof; and all such sum and sums of money as might be due to the said Julia Ann Bigelow from the testator as her guardian, together with free power and authority to ask, demand, sue for and receive the same in the names of the said Moses and Jula, or either of them, or in any other proper name or names or manner whatsoever, as might be necessary, upon the trusts therein declared, that is to say, to pay, transfer, assign or otherwise dispose of all the said trust moneys and property, and the interest, dividends and produce thereof, to such persons, for such purposes and in such manner as the said Julia, notwithstanding her coverture, should by any deed or deeds, writing or writings, sealed and delivered as therein set forth, or by her will, direct or appoint; and in default of and until such direction or appointment, and so far as any such direction or appointment should not extend, to take all such measures in law and in equity as should be proper and necessary to call in, collect and reduce into money all such of the

trust property assigned and transferred as aforesaid as should not consist of money, and, with the consent of the said Julia Ann in writing, to lay out and invest the money which should come to his hands therefrom and all sum or sums of money therein mentioned, as and when the same should be received, in his name, on bond and mortgage good and sufficient within this State, and, with such consent as aforesaid, alter, vary and transfer all such bonds and mortgages, as to him should seem meet; and to stand and be possessed of all and singular the trust property and the produce, interest and dividends thereof, in trust to pay the interest and produce thereof, as and when the same should become due and be received by the complainant, during the joint lives of the said Moses and Julia, into the proper hands of the said Julia, or of such person or persons and for such purposes as the said Julia, notwithstanding her coverture, should by writing under her hand and seal from time to time direct and appoint, in trust that the same might be for the separate and sole use and at her absolute and uncontrolled disposal, and not liable to the debts, contracts, forfeitures or engagements of the said Moses, and in case the said Julia should survive the said Moses, to pay, transfer and assign, immediately on the death of the said Moses, the said property unto the said Julia Ann; and in case the said Julia should die before the said Moses, then, from and after the death of the said Julia, to pay the interest and annual product thereof, as and when the same shall become due and be received, into the proper hands of the said Moses, or into the hands of such person or persons, and for such interests and purposes as the said Moses, by writing under his hand should from time to time, but not by way of anticipation, direct ; and upon the death of the said Moses and Julia or the survivor of them, to pay, assign and transfer the said trust property to the person or persons who, under the statutes for the distribution of the estates of intestates, would be entitled to the personal estate of the said Julia in case she should die intestate. That the said Moses did, in and by the said indenture, among other things, covenant and agree to and with the complainant that he would or should not at any time prevent or obstruct the said Julia, her heirs, appointees, executors, administrators or assigns, or the complainant, from holding, enjoying, or receiving, taking and disposing of the said trust prop-

erty, or the interest, produce or profits thereof according to the true intent and meaning of the said indenture ; and that he would and should, in case the said Julia should die before him, permit the will of the said Julia, if any, to be proved &c.

That the complainant assumed and took upon himself the execution of the said trusts ; and became and was, as such trustee, entitled to have and receive the moneys due to the said Julia from the said testator as her guardian, and all such moneys as the said Moses and Julia were, or either of them then was or ought to be entitled to by or under the said will, by reason of any provision thereof, and all the right, title, interest &c., both at law and in equity, of them the said Moses and Julia, or either of them, in and to the moneys and property so assigned and transferred thereby, with full power and authority to demand, sue for and receive the same, in the names of the said Moses and Julia, or either of them, or in any other proper name or names, or manner as might be necessary.

That the said Moses and Julia are now living.  That the said Julia hath not at any time directed the payment, transfer or other disposition by the complainant as such trustee of the said moneys so due her from her said deceased guardian, or the moneys to which she became, was or is entitled to under the said will.

That the said testator, in his life time, or his legal representatives since his death, never accounted to the said Julia before her marriage, or the said Moses and Julia, or either of them, since their marriage, or to the complainant since the making of the said indenture, for or on account of the said moneys so received by the testator for the use of the said Julia, or any part thereof, or for or on account of the distributive share of the said Julia in the rest of the estate real and personal so bequeathed and devised as aforesaid, or paid the said Julia before her marriage, or the said Moses and Julia, or either of them, since their said marriage, up to the time of the making of the said indenture, or to the complainant since, anything on account of the said moneys or the said distributive share.

That the said executors (the defendants) were, forthwith after the making of the said indenture, notified and informed of the making thereof; and that the complainant, by reason thereof,

was entitled to have and receive into his possession the said moneys and distributive share, in the execution of the trust directed by the said indenture.

That the complainant, or some person in his behalf, has repeatedly applied to the said L'Hommediu and Fowler, as such executors, for a statement of the account of the testator as such guardian, and for an account of the personal estate of said testator and the interest thereof. But now so it is &c. And sometimes they pretend, that before the making of the said indenture, or before they had notice or information thereof, the said Julia and Moses received the distributive share to which the said Julia was entitled out of the residue of the said personal estate, and executed to the said executor a release of the said distributive share; whereas the complainant charges the contrary to be true; and that if the said Julia and Moses ever did receive any part of the said distributive share, it was but a small part thereof, and not to exceed $700, and was received after the making of the said indenture, and after the defendants, as such executors, had notice thereof, and after the creation of the said trust; that the receipt thereof was the act, and ought to be considered by this court as the act of the said Moses exclusively, and not of the said Julia. That if the said Moses and Julia executed to the said L'Hommedieu and Fowler a receipt and release for the said distributive share, such receipt and release were made and executed after the making of the said indenture and the creation of the said trust, and after the said executors were notified and informed thereof, and upon the payment to the said Moses of a sum not exceeding $700, which was more than $3000 less than the distributive share to which the said Julia was entitled, and upon and by reason of representations to the said Moses as to the amount of the residue of the personal estate of said testator, and especially of particular items thereof to be distributed, made by the said L'Hommedieu and Fowler, partly deceptive and untrue, and of wrongful and fraudulent concealments made by them of divers large and important items of personal property of the testator, whereby the said Moses was, intentionally by them, misled and deceived as to the amount of the distributive share to which the said Julia was

entitled, and of threats and intimidations made to and practiced upon the said Moses by the said L'Hommedieu and Fowler, whereby they threatened and made him apprehensive that they would bring up claims against him, then outstanding, and attempt to set off the same against the said distributive share of the said Julia, and of attempts made by them to buy up such outstanding debts for that purpose, and of unreasonable and oppressive delay in the settlement of the estate, and not filing an inventory thereof; which has been withheld to this time, as the complaniant has been informed and believes ; the said Moses being then greatly embarrassed in his pecuniary affairs and in need of money.   That the signing and execution of the said receipt and release were, and ought to be considered by this court, as the acts of the said Moses exclusively.   That, in particular, the said executors, or one of them, untruly, and intentionally to mislead the said Moses, represented to him that the indebtedness of one Joseph E. Edsall to the estate of the said testator was only about $4000, and that it could not be. collected because of the defense of usury which could be set up against the same, and that the amount due on a bond and mortgage on certain property called the Franklin Furnace property, constituting a part of the personal property of the said testator, did not amount to ten thousand dollars ; whereas the complainant charges that the amount due from said Edsall was not less than $10,000, and that usury could not be successfully pleaded thereto, and that the amount of the said bond and mortgage was not less than $13,000.

And the complainant submits, that if any payment was made to said Moses and Julia on account of said distributive share, and a receipt or release therefor was given by the said Moses and Julia after the making of the said indenture and the creation of the said trust, such payment, receipt or release ought not to avail against the rights of the complainant under the said indenture ; or, if the court shall be of opinion, in case it shall appear that such payment, receipt and release were made and given after the said indenture was made, but without notice or information thereof to the said L'Hommedieu and Fowler, or either of them, that such payment &c. shall have effect as against the com-

plainant, they should have effect, under any circumstances, only to the extent of the said $700.

The bill prays an account of the moneys received by the testator as guardian as aforesaid, and also of the personal estate of the testator, and that the same may be applied in due course of administration; and that the complainant may be paid, &c.

The defendants answered separately.  The answer of Fowler was filed April 9th 1846.  He admits the will and that he and L'Hommedieu proved the same, March 14th 1844; and that this defendant possessed himself of so much of the personal estate as came to his knowledge within the State of New Jersey, a true and perfect inventory whereof is now nearly completed, amounting to $40,000, subject to deductions for bad debts and unsettled accounts.

He admits the death of Jacob S. Thompson, and that said Julia, as his niece and one of his heirs at law, became entitled to one fifth of his real estate; and that several tracts of land, part of said real estate, were assigned to her in severalty; but that he does not know and cannot state the value thereof; and that the said Julia, as one of the next of kin, was also entitled to one fifth of the personal estate of the said Jacob S. Thompson, after paying &c.; but how much it amounted to he has no knowledge or means of ascertaining, and therefore cannot state.

He admits that the said testator acted as the guardian of the person and estate of the said Julia, and as such took charge of her real estate after the same was set off to her, but at what precise time he does not know; nor does he know or believe that the said testator ever occupied or used the said lands; but he is informed and believes that he rented some part of said real estate to one Mark Thompson, for $200 a year, and afterwards to one Richard Coursen, but for what rent he does not know; nor does he know how long the said Thompson and Coursen, or either of them, occupied said real estate, nor how much rent they paid for the same, except that in the books of the testator he finds a credit of $45 to Coursen for rent, of Sept. 22d, 1833; and this defendant afterwards, but at what precise time he does not recollect, received of Coursen $40, which he paid over to the said Julia.

He admits that the testator in his life time received divers sums of money of the personal estate of said Thompson for the use of the said Julia; but how much, or at what time, or what deposition he made of the same he has no knowledge except from the books of account of said testator, by which it appears that the testator received of the Administrator of Thompson in Pa. on the 18th Feb., 1833, $1315, and of one Henry J. Butterworth, on the 19th of April, 1843, $9. Besides the said sums he has no knowledge that the testator received any other moneys of the said personal estate.

He states that by the said books of account it also appears that the said testator has charged the said Julia with divers sums of money by him paid to and for her, for expenses of the partition of said real estate, and of a controversey respecting the same before the Prerogative Court, and for board and tuition in music, traveling expenses and necessary and suitable things furnished her after she attained 21, amounting, in all, to $3,176 28, and leaving a balance against her of $1,505 23.

He says he is informed and believes, and therefore charges that the testator paid out divers other large sums of money for the said Julia not mentioned in the said books of account, amounting to about $1000, which is a just charge against her.

That from the knowledge he has of the transactions of the said testator in relation to the property of the said Julia, and from the understanding in the family while she lived there, before her marriage, and from conversations between the testator and said Julia, he believes and therefore states that the whole amount of money received by the testator for her was paid out and expended by him for her use and benefit, or paid to her. And he recollects, on one occasion when he and the testator were conversing in the presence of said Julia about her property, that the testator said she was spending too much money, and had already spent more than was due to her.

And at another time, after Julia had been spending some time in Washington, she mentioned to this defendant that the testator would not let her have all the money she wanted, and had told her that she had spent all the money that he had received for her from the estate of said Thompson.

That he verily believes that when Julia left the testator's

house, after her marriage, she was largely indebted to him for moneys paid to her and for her use and benefit, and that it was so understood by her and her said husband.

That he is informed and believes that the said Julia, after her marriage, was the constant object of the bounty of said testator, and that he paid to and for her, and to the said Moses on her account, divers large sums of money, but at what time, and in what sums he does not know ; and also gave to her and her said husband, soon after her marriage and up to the time of his death, the possession of a large and valuable farm in Warren county, in a part of which the testator had a life estate, and in the residue the fee simple, and suffered them to receive the rents and profits thereof to the amount annually of at least $300.

That from sundry letters of Bigelow addressed to the testator, and sundry accounts and statements in the handwriting of the testator and the said Bigelow, it appears, and this defendant believes and therefore states that the testator paid and advanced large sums to the said Bigelow, partly for his individual use, and partly for the use of the firm of Bigelow, Canfield & Ingraham ; but, as this defendant believes, all at the particular request of said Bigelow, and to assist him in his business, amounting to a large sum of money, but to what sum he does not know ; but he heard the testatator say, a short time before his death, that he had advanced for the said Moses, in money and property, $75,-000, and would lose that amount by him; all which, he submits, is inconsistent with the idea of any indebtedness of the testator to the said Julia as set forth and claimed in the bill.

He denies that he has ever been requested to render any statement of the account of the testator as guardian of the said Julia, or otherwise, either by the complainant or any person on his behalf; and also denies that he ever had any notice or knowledge whatever, except by the bill, of the execution by the said Moses and Julia to the complainant of the said deed of trust as set forth in the bill.

He says that the testator, by his will, devised a tract of land and premises in the township of Mansfield, Warren county, containing 28 acres, with valuable buildings and improvements thereon, in trust for the said Julia during her life, and after her

death to her children; and did also give and bequeath unto his executors whatever sum should at the time of his death be due to him from the firm of Bigelow, Canfield & Ingraham, or from any of the individuals of that firm, in trust to and for the exclusive use and benefit of said Julia, to be paid upon her order and receipt; and did, also, give and devise to the said Julia, in fee, the equal undivided eighth part of his real estate not thereinbefore devised; and that the value of the real estate so devised to the said Julia greatly exceeded the whole amount of money which the testator received or ought to have received and collected as guardian of the said Julia; and that the amount of the money due the testator at the time of his death, from Bigelow, Canfield & Co., and some of the individuals of that firm, also greatly exceeded any sum which the testator ever received or ought to have received as the guardian of the said Julia; and that the securities for the said debts have been and were paid and transferred to the complainant before the filing of said bill, upon the order and receipt of the said Julia; and this defendant submits that the said devises and bequests are and should be taken in satisfaction of any demand which the said Julia might have had against the testator in his life-time; and that neither the said Julia nor any person on her behalf have any right against the executors of said testator to have an account of said guardianship.

That the testator, at the time of his death, left a paper, in his own writing, purporting to be a codicil to his said will, in the words and figures following: " This is a codicil to be added to the last will and testament of me, Samuel Fowler, which bears date on or about the 4th of December, 1842. 1st, I do hereby ratify and confirm my said will in all respects, so far as any part thereof shall be revoked, altered or addition thereto by this present codicil, and first, the first bequest in said will made to my wife Rebecca, wherein I have bequeathed to her so much of my househould furniture as she may require for her own use, it is my will and intention hereby to alter and revoke the same so far in this codicil as to say, that I give and bequeath to her so much of my household furniture as she may require for her own use, and so much as may be required for the use of our children that may wish to re-

side with her, and at her decease all the aforesaid furniture to be equally divided among my four daughters, Julia, Estelle, Rebecca and Clarinda. In the last bequest in the aforesaid will, I hereby revoke that part of the same so far as relates to my daughter Julia," as by reference, &c.

And this defendant says that he was advised by counsel, and believes, that he would have been able to prove that the said codicil was made and intended by the said testator as and for a codicil to the said will, and that the same was sufficiently signed and published to make it effectual to pass personal estate; and that he and his co-executors soon after the death of the testator were about to prove the said codicil, when the said Moses filed a caveat against the proving thereof; in consequence of which, such proceedings were had in due course of law, that the matter of proving the said codicil was set down for hearing before the Orphans' Court of Sussex, on the 9th of April, 1844, and afterwards continued to another term. That while the said matter was so pending in said court, the said Moses proposed to this defendant and his co-legatees an arrangement of the said matter; and after various propositions and conversations, proposed that if the other residuary legatees would transfer to him, or to some person whom he should name, certain notes and claims which the said Moses had before then transferred to the testator as a payment of the amount thereof upon his claims upon the said Moses and the said firm of Bigelow, Canfield & Co., and which are particularly mentioned in a certain article of appointment or order of the said Julia hereinafter set forth, amounting in the whole to $5,179 71, besides interest then accrued thereon, and which were then held by this defendant as assets of the said estate, and would pay to him, the said Moses, $700, he and his said wife would take the same in full satisfaction of all claim and demand upon the personal estate of the testator, except that portion of the same which was bequeathed in trust for the said Julia. And on this defendant declining this proposition, the said Moses urged the same with great importunity, and, among other reasons to induce the said legatees to assent thereto, he stated that if those notes and claims were placed within his control, he could, with them and the money he asked, compro-

mise and pay all the debts outstanding against him, and be able to resume business, and thus provide for and benefit his family more than in any other way; while, if the said notes and claims remained in the hands of the executors, their efforts to collect them would probably be ineffectual, as the debtors on the said notes and claims were of doubtful ability to pay, and that a very considerable loss would be sustained. And, after consultation and due reflection, the said legatees, including this defendant, considering that probably the said notes and claims could be turned to good account by said Moses and be of great service to him and his family, and that they might be in whole or in part lost to the estate if retained by the executors, and considering that the sum of $700 was a mere gratuity and not due to the said Moses and his wife, but that it might, and probably would be the means of preserving the friendship and harmony of the family, agreed to the said proposition of the said Moses, and it was then supposed that all controversy about the said estate was settled between the said parties. And this defendant says that the said Moses then produced the draft of a receipt which he proposed to give upon the payment of the said $700, but the same was excepted to by this defendant, because, by the agreement between the parties, a release of all claim against the personal estate was to be given, and thereupon a form of such release was furnished to the said Moses to be executed by him and wife in such manner that it might be duly recorded as an acquittal of the said executors.

That, at a subsequent day, the said Moses presented to this defendant a release which, he believes, was copied from the draft furnished as aforesaid, or was to the same effect, purporting to be executed by the said Moses and Julia in the presence of a female wholly unknown to any of the executors or legatees, and who he said was the nurse of his said wife; and upon this defendant's excepting to the execution of the said release because of the obscurity of the subscribing witness, but more particularly for want of a proper acknowledgment by the said Julia, the said Moses pretended to be offended at what he suggested was a want of confidence in him and a reflection upon the integrity of himself and wife, and an insinuation that they would be guilty of

repudiating their contract ; but this defendant insisted upon a release duly signed and acknowledged by the said Julia before a proper officer ; and afterwards, on or about May 16, 1844, the said Moses produced a lease executed by him and his said wife and duly acknowledged by the said Julia before one of the Masters of this Court ; which said release is of the tenor and effect following : " Know all men by these presents, that we, Moses Bigelow and Julia Ann Bigelow his wife, both of &c., the said Julia being the daughter of Samuel Fowler, late of &c., deceased, and called Julia in and by his will, do hereby confess and acknowledge that we have had and received of and from Elias L'Hommedieu and Samuel Fowler, acting executors of said will, $700 in full payment and satisfaction of all legacy and legacies, distributive share and shares of the personal estate of said deceased to which we or either of us are or is or may be entitled by law under the said will, except the legacy and bequest in said will contained whereby the testator gave and bequeathed unto the executors thereof whatever sum or sums of money might, at the time of his decease, be due to him from Bigelow, Canfield & Ingraham, or from any of the individuals of that firm, in trust to and for the exclusive use and benefit of his said daughter Julia, to be paid upon her own order or receipt, and except, also, all the estate, right, interest, produce and profits which we the said Moses and Julia, or either of us, have or has or may have in the real estate of the said deceased or any part thereof which may be sold by the said executors by virtue of the said will. In witness whereof, &c., this 13th of May, 1844. Signed, sealed and delivered in the presence of J. C. Pennington."

That this defendant, on the delivery to him of the said release, delivered to the said Moses, in the presence of the complainant, the note of this defendant for the said sum of $700, which was received as payment of the said sum, and has since been paid by this defendant ; and at the request of the said Moses transferred and delivered the said notes and claims pursuant to the proposition of the said Moses and the said agreement, and also by the appointment and direction of the said Julia, hereinafter recited. And this defendant further states that, as the said codicil related

only to the interests of the said Julia in the residue of the said personal estate and to the household property, and that, having adjusted the claim of the said Julia in the manner aforesaid and obtained a full release and discharge of the said interest, and having also made a satisfactory arrangement with their mother about the said household property, the said residuary legatees were advised and believed that it was unnecessary to prove the said codicil; and, accordingly, proof of the same was not attempted.

He says that the said release of the said Moses and Julia was given by them with full knowledge of said Moses, and, as this defendant was informed by him and believes, with the full knowledge and consent of his said wife. And this defendant denies that the said release was procured by any threats or misrepresentations, concealment or deception of any kind by him to or upon the said Moses, either directly or indirectly; or that he ever withheld from said Moses or his said wife any information he possessed, or which either of them desired to receive of him, respecting the said estate; but he states, that he informed the said Moses, before the execution of the said release, truly, of the amount of the personal estate of said testator to the best of his knowledge and belief; and he denies that he represented to the said Moses or any other person that the indebtedness of the said Jos. E. Edsall to the estate could not be collected because of the defense of usury which could be set up against the same, or any thing to that effect. He says he may and probably did tell said Moses, as in truth he might, that the indebtedness of the said Edsall to the estate was of very long standing and might probably be defeated by the plea of the statute of limitations, and that the transactions concerning the same were very loose and might be difficult to prove, and the amount uncertain if the said claim should be resisted.

He denies that he ever made any misrepresentation to the said Moses respecting the bond and mortgage on the Franklin Furnace property; but says he believes he did state to the said Moses truly what he supposed to be the amount due thereon, since which time a claim for an allowance upon the said bond and mortgage has been made, by the owners of the equity of re-

demption, for an alleged deficiency in the quantity of lands conveyed by the testator to the mortgagors, and to secure a part of the purchase money for which land the mortgage was given.

He submits whether the attempt of the complainant, and of the said Moses and Julia through the complainant, to repudiate the said release is not a fraud upon the executors and legatees; and whether the conduct of Bigelow in procuring the arrangement of the controversy about the said codicil has not the appearance of settled design and practice upon the executors and legatees to deceive and defraud them.

He states that, although the complainant was present at the time this defendant delivered to the said Moses the said note for $700, and saw and knew, as this defendant believes, the nature of the whole transaction, yet he gave no notice to this defendant nor said a word to him about the said trust deed, or that he was a trustee or representative of the said Julia; nor was any intimation of that kind given to this defendant except what was to be gathered from the said appointment, order or receipt made by the said Julia, in the words and figures following: " Whereas Samuel Fowler, late of &c., deceased, made and published his will and thereby gave and bequeathed as follows : Item, I give and bequeath unto my executors whatever moneys may at my decease be due me from Bigelow, Canfield & Ingraham, or from any of the individuals of that firm, in trust and to and for the exclusive use and benefit of my said daughter Julia, to be paid upon her own order and receipt; and whereas Moses Bigelow, one of the individuals of the said firm, was individually indebted to the said deceased in a large amount of money at the time of his decease, for which a judgment has been obtained in the Supreme Court, and, as collateral security for the said money so due from him to the said deceased, did assign, transfer and set over to the said Samuel Fowler, deceased, on the 22d March, 1843, six notes drawn by Benjamin Terry, payable at the State Bank at Newark to the order of said Bigelow and by him indorsed; one dated Newark, Nov. 12, 1842, at six months, for $208 08, and the remaining five dated March 18, 1843, one payable in four months, for $306 15 ; another at six months, for $592 87 ; another at eight months, for $592 87 ; another at ten months,

for $592 87; and the other at twelve months, for $592 87, for which the said Moses now holds the receipts of said testator expressing the purpose for which the same were, assigned as aforesaid; and whereas the said firm of Bigelow, Canfield & Ingraham.was also indebted to the said deceased, at the time of his death, in a large amount of money, and, as collateral security therefor, the said Bigelow, one of the individuals of the said firm, did assign, transfer and set over, on the 24th of April, 1843, the proceeds of S. S. Merriman's note, due June 16, 1842, payable to the order of said firm, for $518 95, then in the hands of Bliss & Baldwin, Gainesville, Ala., for collection, and a note of Barrow & Wilson, dated St. Francisville, May 21, 1842, payable to the order of said firm on the 6th February, 1843, for $422 15; and, on the same day, an order of J. W. Brunott, for the moneys he might collect on Collins & Baldwin's two notes indorsed by M. L. Meeker, of about $708 each; and whereas the said notes and claims are now held by the executors, and for the purposes for which they were assigned as aforesaid, as per the receipts now held by the said Moses; and whereas, by the force, operation and legal effect of the said bequest, the said Julia has become entitled to the said notes as collaterals to the indebtedness so bequeathed to her :   now I, Julia Ann Bigelow, wife &c., and daughter &c., and the legatee in said will named, do hereby authorize,.empower, order and direct the executors of said deceased to assign and transfer all the aforesaid notes, claims and demands to Samuel H. Pennington, of &c.   And I do hereby declare that, upon such delivery, this writing shall be a full and effectual receipt for the same from me, and a full and effectual discharge of the said executors therefrom.   Witness &c.

Signed, sealed and delivered in the presence of

J. P. PENNINGTON.

JULIA ANN BIGELOW."

Upon which said appointment is indorsed the receipt of the complainant as follows:

" Received, Newark, May 16, 1844, of Samuel Fowler, of &c., one of the executors of Samuel Fowler, an assignment of

all of the notes, claims and demands mentioned and described in the within order.

(Signed)     SAMUEL H. PENNINGTON.

And from two other orders or receipts respecting the claims of the said testator against the said firm of B., C. & I., or some of them, which had been bequeathed in trust for the said Julia ; to which orders or receipts, signed by the said Julia, dated May 7, 1844, he refers.

He further says that the said Moses had, pending the negotiation about the said codicil, stated that the notes and claims by him transferred to the testator on account of his claims against said Moses and his said partners were collateral security for so much of the said claims, and as such, constituted a part of the trust property bequeathed to the said Julia. And at the time of the payment of the said $700 to the said Moses it was also so insisted ; but this defendant then claimed and still claims that the said notes and claims so transferred to the testator were not collateral to the claim of said testator, but were taken as a payment of so much thereof ; but this defendant believes, and was so advised, that if the said notes and claims were transferred according to the order of the said Julia and the request and desire of the said Moses, and a proper release and acquittance was executed to the said executors, it was of no consequence to them, nor to the legatees, whether the said notes and claims were considered as collateral security for, or a payment on said claims against the said Moses and his said partnership firm ; and therefore, only, he consented to the recitals contained in the said receipts or orders ; but this defendant expressly states that the said notes and claims constituted a part of the consideration of the said release, although at the particular desire of the said Moses it was not so expressed in the said release.

He says that, after the settlement of the said claim of the said Moses and his wife to the residuary part of the personal estate, upon consultation with the said residuary legatees, it was by them thought advisable not to complete and fill the inventory of the personal estate until they should ascertain the amount of money due from said Edsall and upon the bond and mortgage on

23

the said Furnace property and several other large and unsettled claims; but the said inventory and appraisement, so far as the same could be made with certainty, and a schedule of all the assets and personal property which had come to the knowledge of this defendant, were kept among the papers of the said estate, and at all times accessible to and subject to the examination of all the said legatees and other persons interested in the said estate; and no concealment of any kind was made or attempted in reference to any of the assets or property of the said estate.

But he submits that the said Moses and his said wife, having received all the share of the said personal property due to them, and given their acquittance and release for the same, have now no right, by themselves or any other person for them, to call the executors in question respecting the same, or respecting the inventory thereof, or any proceedings relating thereto.

But if, in the opinion of the Court, the said release should not be construed and taken to be an absolute bar of any further claim of the said Moses and Julia to the said personal estate, that then this defendant may be permitted to prove the said codicil, and that due and legal effect may be given to the same; and that the said notes and claims transferred in pursuance of the said agreement may be restored to this defendant, to the end that they may be applied in due course of administration according to the will; and that the said $700 so paid may be refunded to this defendant, or made a charge against the said Julia, to be paid and allowed out of the said claims bequeathed to her in trust as aforesaid; or that such order may be made respecting the said notes and claims as the court shall think equitable and just.

The answer of the other executor is substantially the same.

Testimony was taken on both sides; and the cause was heard on the pleadings and proofs.

*A. C. M. Pennington* and *A. Whitehead* for the complainant. They cited 2 *Wms.'s Exr's*, 928, 9; 1 *Story's Eq. Jur.*, sec. 259 and note, 307, 308, 310, 321, 384, 207, 246, 116 and on; 3 *Swanst.* 463; 1 *Ves.* 401; 6 *Simons*, 576; 4 *Russell*, 35; 1

*McCord*, 389; 5 *John. Ch.* 409; 2 *Cowen*, 196; 2 *John. Ch.* 25, 256; 1 *Ib.* 27, 394; 4 *Paige*, 578; 4 *John. Ch.* 104; 1 *Harr. & Gill*, 11; 1 *Hill's Ch.* 390; 16 *Peters*, 27; 1 *Vern.* 32; 4 *Cowen*, 220; 1 *Bro. Ch.* 1; 2 *Ib.* 151.

*D. Haines* and *P. D. Vroom* for the defendants. They cited *Ward on Leg.* 248, 250; 18 *Law Lib.* 128, and notes; 2 *P. Wm.'s* 132; *Moseley*, 8; 2 *Story's Eq.*, sec. 1119, 1122; 1 *Green's Ch.* 1; 3 *P. Wm.'s* 353; 1 *Story's Eq.*, sec. 110, 121, 130, 1; 3 *Swanst.* 400, 467; 1 *Sim. & Stu.* 555; 1 *P. Wm.'s* 733; 1 *Ves. and Beam.* 30; 4 *Ves.* 849; 1 *Story's Eq.*, sec. 132; 2 *Ball & Beatty*, 171, 180; 4 *Stark. Ev.* 708; 1 *Burr. Rep.* 424; 4 *Term. Rep.* 678; 1 *Greenl. Ev.*, sec. 324; 2 *Kent's Com.* 179, 180; 13 *Peters*, 221, 231; 1 *Coxe*, 188; 2 *Stark. Ev.* 551.

THE CHANCELLOR.   Samuel Fowler, deceased, died Feb. 26, 1843, leaving a will, dated Dec. 4, 1842, by which, (after giving divers pecuniary and specific legacies, and devising certain of his real estate, and directing the payment of certain annuities out of his personal estate, and which he charged upon the residue of his real estate not specifically devised, in case of a want of personal estate, and authorizing his executors in that case to sell or set apart for such payment such part of the said residue of his real estate as they should deem proper,) bequeathed and devised as follows: "Item, I give and bequeath unto my executors whatever sum or sums of money may, at the time of my decease, be due to me from Bigelow, Canfield & Ingraham, or from any individual of that firm, in trust and to and for the exclusive use and benefit of my daughter Julia, to be paid upon her own order and receipt. Item, all the rest and residue of my estate, real and personal, I give, devise and bequeath unto my sons Samuel, Henry Ogden, Robert Ogden and John, and my daughters Julia, Mary, Estelle, Rebecca and Clarinda, to be equally divided between them, share and share alike."

Julia, one of the daughters, had, in Feb. 1836, intermarried with Moses Bigelow.

After the death of the testator, and on the 7th May, 1844, by an indenture between the said Moses Bigelow and Julia his wife,

of the first part, and Samuel H. Pennington, of the second part, reciting the said will, the said Moses Bigelow and his said wife conveyed to the said Samuel H. Pennington all the interest, property, claim and demand of the said parties of the first part, or either of them, under the said will, in trust, to pay and transfer the moneys, securities, &c., to such person, for such purposes and in such manner as the said Julia, notwithstanding her coverture, should, by writing under seal attested by two witnesses, or by will direct; and in default of and until such direction, and so far as any such direction shall not extend, in trust to invest, &c.; and, during the joint lives of the said Moses and Julia, pay the interest and annual produce of the trust moneys and securities into the proper hands of the said Julia, or to such person and for such purposes as the said Julia shall, by writing, from time to time direct, for the sole and separate use of the said Julia; and if the said Julia shall survive the said Moses, to pay and transfer the said moneys and securities unappointed and undisposed of to the said Julia; but if the said Moses shall survive the said Julia, then to pay the interest and annual produce of the said moneys and securities to the said Moses or such person and for such purpose as he shall, by writing, from time to time direct; but not by way of anticipation; and after the death of the said Moses and Julia, or the survivor of them, to pay and transfer the said moneys and securities to such person or persons as would, under the statutes for the distribution of the estates of intestates, be entitled to the personal estate of the said Julia.

On the 20th Sept. 1845, the said Samuel H. Pennington, trustee as aforesaid, exhibited his bill against Elias L'Hommedieu and Samuel Fowler, (the latter being one of the children and devisees and residuary legatees under the will of the said Samuel Fowler, deceased,) the acting executors of the will of Samuel Fowler, deceased, for an account of the personal estate of the said testator, and for the distributive share of the said Julia thereof under the said will.

The answers of the executors, filed April 9, 1846, admit, that the defendant Samuel Fowler possessed himself of so much of the personal estate as came to his knowledge within the State of New

Jersey, a true and perfect inventory whereof, the answer says, is now nearly completed, amounting to $40,000 ; and they set up, in defense, a release, dated May 13, 1844, executed by the said Moses and his said wife, by which they acknowledge to have received from Elias L'Hommedieu and Samuel Fowler, acting executors &c., $700 in full payment and satisfaction of all legacy and legacies, distributive share and shares of the personal estate of said testator to which they or either of them are or is or may be entitled by law under the will of the said testator, except the bequest in said will whereby the testator bequeathed to said executors whatever money might, at his death, be due to him from Bigelow, Canfield & Ingraham, or from any of the individuals of that firm, in trust to and for the exclusive use and benefit of his said daughter Julia.

No inventory of the personal estate of the testator was shown to Bigelow and wife, or either of them, at or before the execution of the said release ; nor has any inventory of the whole personal estate of the testator yet been made ; nor have the defendants informed the court by their answers what is the true amount of such personal estate to be distributed under the residuary clause in the said will. But sufficient appears from the answers and proofs in the cause to show that the distributive share of the said Julia under the said residuary clause would be $4,500 or more.

If nothing more than this appeared in the case, it could not be gravely contended that the release would be a bar. The court would presume, either that both parties, the executors and Bigelow and wife, were under a misapprehension as to the amount of the personal estate, or that Bigelow and wife were under such misapprehension and that the executors omitted to inform them of the amount thereof ; either of which presumptions would be a sufficient ground on which to declare the release inoperative.

The foregoing view gives the simple result of the transaction between the executors and Bigelow and wife. A distributive share worth $4,500 was released for $700.

It may readily be anticipated that the executors would not have proposed or received a proposition for such a settlement for this distributive share, or attempted to sustain it before the court, without laying before the court some circumstances on

which they acted in making or acceding to a proposition for a settlement on such terms, and on which to contend for the validity of the release.

The grounds laid before us by the executors on which they contend that the release is valid, are, first, that, after the death of the testator, a paper in his own handwriting was found in the words and figures following : " This is a codicil to be added to the last will and testament of me, Samuel Fowler, which bears date on or about the 4th of December, 1842—1st, I do hereby ratify and confirm my said will in all respects ———— so far as any part thereof shall be revoked, altered or addition thereto by this present codicil, and first, the first bequest in said will made to my wife Rebecca, wherein I have bequeathed to her so much of my household furniture as she may require for her own use, it is my will and intention to alter and revoke the same so far in this codicil as to say that I give and bequeath to her so much of my household furniture as she may require for her own use and so much as may be required for the use of our children that may wish to reside with her, and at her decease all the aforesaid furniture to be equally divided among my four daughters, Julia, Estelle, Rebecca and Clarinda. In the last bequest in the aforesaid will, I hereby revoke that part of the same so far as relates to my daughter Julia." (This paper was not signed, nor was any concluding clause added to it : it was found in just the shape above given.) That the executors submitted this paper to the Surrogate of Sussex for probate. That the said Surrogate declined admitting it to probate. That the executors proved the will. That the executors took steps for the purpose of submitting to the Orphans' Court of Sussex and of contending before that court that the said paper should be admitted to probate as a codicil. That while matters stood in this position the negotiation between the executors, or Samuel Fowler, one of the executors, and Bigelow in reference to the share of Bigelow's wife was going on ; and that the hearing before the Orphans' Court was several times postponed in view of the said negotiation. That the said Samuel Fowler contended that the said paper was a codicil, and that the negotiation with Bigelow was concluded and assented to by Bigelow on the ground of the doubt existing

whether this paper was or was not a codicil. That after the negotiation with Bigelow was concluded and the release of him and his wife was obtained, it was thought by the said Samuel Fowler and the other members of the family that it was not worth while to proceed further in the matter of the said paper, and the question whether it could be admitted to probate was never submitted to the said Orphans' Court.

The next ground on which the executors contend that the release is valid is, that the executors claimed that certain promissory notes made by third persons to Bigelow, or to Bigelow, Canfield & Ingraham, which had been assigned to the testator in his lifetime, and which Bigelow claimed were assigned by him as collateral security for the debt of Bigelow or said firm to the testator, were not collaterals, and would not go to Bigelow's wife as incident to the principal debt bequeathed to her, nor to the said Bigelow, but were absolutely a part of the assets of the testator's estate, unconnected with the said debt and independent thereof ; and that the consent of the executors to assign these promissory notes to some person for the use of Bigelow and wife, or one of them, and their assignment of the same accordingly, was a part of the consideration of the release.

As to the nature of the paper spoken of as a codicil, if the executors were sincere in their claim that it was a codicil, it was their duty to proceed to submit the question of probate to the proper tribunal. If it was a codicil it cut off Julia entirely from any share in the residue of the personal estate ; and they were out of the line of their duty in offering Bigelow anything for his wife's share of the personal estate. Several of the distributees under the residuary clause were minors. If they thought it a codicil they were guilty of a breach of duty and of trust in not submitting it for probate without any reference to any attempt to negotiate with Bigelow; and are in breach of duty and of trust yet in omitting to submit it for probate. Executors cannot be allowed to claim a paper to be a codicil cutting off a share, and postpone from time to time the hearing upon the question, and offer so much for the share and give it, and then omit to submit the question of probate to the court. They are not at liberty thus to speculate, either for themselves or the other distributees,

on the fears of the person (a child in this case, or the husband of a child,) to be affected by the paper if it be a codicil, and, on effecting an arrangement with such person, omit to offer it for probate, and go on and settle the estate under the will which gives to such person a full share of the residue. To sanction such a proceeding would be to sanction a breach of duty in executors, and to open a door for all manner of practices by executors or claimants under a will. No higher duty rests on this court than that of insisting upon a plain, direct and faithful performance of the trust reposed in executors.

As to the matter of the collaterals before mentioned, no such consideration appears in the release; and it does not appear that they were inventoried as a part of the $40,000. Again, I think it clear that they were collaterals.

It is manifest that the executors in their negotiation with Bigelow insisted on these two claims or grounds : that these notes were absolutely a part of the assets of the estate; and that the said paper was a codicil; and by means of these insistments reached the result of the negotiation with Bigelow. Now, if these notes were made a part of the assets of the estate, what right had they to give them to Bigelow? The other distributees were entitled to their shares of them. In assigning them they yielded to Bigelow's claim that they were but collaterals. If the insistments of the executors were correct, Julia was not entitled to $1 of the personal estate, nor she nor Bigelow to $1 of these collaterals. What right had the executors to say they would give Bigelow the notes, though they claimed they were assets of the estate, and give him $700 besides, though they thought he was not entitled to $1 ?

It seems plain to me that the course taken by the executors shows that these claims and insistments were insincerely made for the purpose of cutting off Bigelow and wife with as little as possible. I cannot conceive that an executor having no interest himself in the residue could have adopted such a course. And this transaction can be regarded by the court only as a transaction by Samuel Fowler in his character of executor. He was not at liberty to set up such claims and objections as he made to Bigelow, in his character of executor, with a view to enlarge his share of the residue as an individual.

I am clearly of opinion that the release should be declared void, and that the executors must account to the complainant for Julia's share of the residue of the personal estate.

As to the guardianship, of which an account is sought by the bill, the facts are these : Jacob S. Thompson died January 1, 1832, intestate, seized and possessed of real and personal estate of which Julia, daughter of the testator, Samuel Fowler, was entitled to one fifth, as a niece of the said Thompson. Of this property the testator took possession in the character of guardian of his said daughter Julia, she being then a minor.

On the 8th of Feb., 1833, the testator received from the administrator of the personal estate of Thompson in Pennsylvania $1,315, and gave a receipt therefor acknowledging the receipt of it as guardian of the said Julia. Julia's share of Thompson's real estate was set off to her in severalty, in March, 1832. The testator rented parts of this real estate so assigned to Julia and received the rents. Julia came of age February 17, 1834; and was married February 4, 1836. It does not appear that the testator took out letters of guardianship.

The answer admits that the testator acted as guardian of the person and estate of Julia; and sets up that, by the testator's books of account, it appears that the testator has charged Julia with divers sums of money, amounting to $3,176 28, and showing a large balance against her. That from the knowledge the executor who answers as to this part of the case has of the transactions of the testator as to the property of Julia, and from the understanding in the family while she lived there, before her marriage, and from conversations between the testator and Julia, he believes that the whole amount of money received by the testator for Julia was paid out to her and for her use ; and that he heard the testator on one occasion say to Julia that she was spending too much money, and had already spent more than was due her ; and that on another occasion Julia told him that the testator would not let her have as much money as she wanted, and had told her that she had spent all the money that he had received for her from the estate of Thompson. That this defendant verily believes that when Julia left the testator's house after her marriage she was largely indebted to him for moneys paid to

her and for her use, and that it was so understood by her and her husband. That this defendant is informed and believes that Julia, after her marriage, was the constant object of the bounty of the testator, and that he paid to and for her, and to her husband on her account, divers large sums, and gave to her and her husband, soon after her marriage, and up to time of his death, the possession of a large and valuable farm in Warren county, and suffered them to receive the rents and profits thereof. That, from letters of Julia's husband addressed to the testator and sundry accounts and statements in the handwriting of the testator it appears, and this defendant believes, that the testator paid and advanced large sums to Julia's husband, partly for his individual use and partly for the use of Bigelow, Canfield & Ingraham; but, as this defendant believes, all at the particular request of Bigelow, and to assist him in his business. That the testator, by his will, devised a tract of land of 28 acres, with valuable buildings and improvements thereon in trust for the said Julia during her life, and after her death to her children; and did also give and bequeath unto his executors whatever sum should at his death be due to him from the firm of Bigelow, Canfield & Ingraham, or from any individual of that firm, in trust to and for the exclusive use and benefit of the said Julia, to be paid upon her own order and receipt, and did also give and devise to the said Julia, in fee, the equal undivided eighth part of his real estate not before devised, and that the value of the real estate so devised to the said Julia' greatly exceeded the whole amount of money the testator received or ought to have received as the guardian of the said Julia; and that the amount of the money due the testator, at the time of his death, from Bigelow, Canfield & Ingraham and some of the individuals of that firm also greatly exceeded any sum which the testator received or ought to have received as the guardian of the said Julia; and that the securities for the said debts have been and were paid and transferred to the complainant, before the filing of the complainant's bill, upon the order and receipt of the said Julia. And this defendant submits that the said devises and bequests are and should be taken in satisfaction of any demand which the said Julia might have had against the testator in his lifetime;

and that neither the said Julia nor any person on her behalf have any right against the executors of the said testator to have any account of the said guardianship.

The books of account of the testator have not been produced in evidence ; so that we are in the dark as to when the charges against Julia therein commenced, or what is the nature of the said account or charges therein, and whether the same kind of account was not kept against the other children. The belief of the defendant and the conversations spoken of by him furnish no reasons why an account of the guardianship should not be given. As to the other statements of the answer upon which it is submitted that the devises and bequests therein mentioned should be held to be satisfaction of any demand of Julia on account of said guardianship, the court may be able to form a better judgment as to that when the account of the guardianship shall be taken.

An account of the guardianship will be directed, reserving the consideration of the question whether, from anything done by the testator for Julia or paid by him to her, or from the devises and bequests made to her in the will, or both, the guardianship liability should be considered satisfied ; with liberty to both parties to take testimony in reference to this matter.

Lapse of time was mentioned in argument as a reason why an account of this guardianship should not now be called for. It was said that the testator was not strictly a guardian ; that he never took out letters of guardianship ; and that he is only to be considered as an ordinary debtor for any moneys he may have received for his daughter. I cannot concur in this view. He professed to act and did act as guardian of the estate, and received moneys expressly in that character and receipted for them in that character.

It is not a case in which the statute of limitations wouuld be a defense, or in which a defense on principles analagous to the statute would be maintained, if the statute or lapse of time had been distinctly set up as a defense in the answer. But this was not done.

It will be referred to a Master to take both accounts.

Order accordingly.